**John W. BAKER and Susan Baker, Plaintiffs,**

v.

**Trudy COXE, et al., Defendants.**

**Civil Action No. 95–12477–PBS.**

United States District Court,
D. Massachusetts.

Sept. 20, 1996.

Robert W. Walker, Walker & Venezia, Concord, MA, for Plaintiffs.

Edward J. DeAngelo, Attorney General's Office, Boston, MA, Gregory S. Gilman, Ropes & Gray, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. INTRODUCTION

This case arises out of an application for a building permit for a pier project on the northern end of Clark's Island which is a heronry site located in Plymouth Harbor, Massachusetts. On November 20, 1995, Plaintiffs, John and Susan Baker ("the Bakers"), brought this action under 42 U.S.C. § 1983, alleging that Defendants, employees of the Massachusetts Executive Office of Environmental Affairs ("EOEA"), violated their due process and equal protection rights by wrongfully denying them a building permit (Count I) and their First Amendment rights by retaliating against them for exercising their right to free speech (Count VII). In addition, the Bakers assert various pendent state law claims.[1]

The EOEA Defendants[2] have moved to dismiss on the grounds: (1) that the Bakers have not stated a claim for which relief can be granted; (2) that this suit is barred by the doctrine of *res judicata* and/or *collateral estoppel;* (3) that they are protected by qualified immunity; (4) that the action should be dismissed under the anti-SLAPP statute, M.G.L. ch. 231, § 59H.

For the reasons set forth below, after hearing, the motion to dismiss for failure to

---

1. The complaint alleges the following additional counts: violation of the Bakers' civil rights under M.G.L. c. 12, § 11 I (Count II); intentional interference with advantageous business relationships (Count III); intentional infliction of emotional distress (Count IV); negligent infliction of emotional distress (Count V); defamation (Count VI), civil conspiracy (Count VIII); and injunctive relief Count (IX).

2. The EOEA Defendants are: Trudy Coxe, in her capacity as Secretary of the EOEA and individually; Thomas French, in his capacity as Assistant Director of the Natural Heritage and Endangered Species Program, a division of the EOEA's Division of Fisheries and Wildlife, and individu-

ally; and EOEA employees Jay Copeland, Patricia Huckery, Bradford G. Blodgett, and Jane Meade, both in their capacities as employees of the EOEA and individually. In addition, the term "Secretary" refers to the Secretary of the Executive Office of Environmental Affairs for the Commonwealth of Massachusetts. Also named in the complaint are Susan F. Tierney, in her capacity as former Secretary of the EOEA and individually; and Janet G. McCabe, in her capacity as former Assistant Secretary of the EOEA and individually. Tierney and McCabe assert that they have not been served with process and for that reason they do not join in the present motion.

state a claim is **ALLOWED** with respect to the substantive due process and equal protection claims (Count I), and **DENIED** with respect to the First Amendment claim. The Court also **DENIES** the "special" motion to dismiss under the anti-SLAPP statute.

## II. *BACKGROUND*

For purposes of this motion, the Court accepts as true only the allegations set forth in the complaint. In addition, the Court has taken judicial notice of two Massachusetts Superior Court decisions: *Baker v. Parsons*, C.A. No. 93–3212, (Mass.Sup.Ct. January 11, 1996); and *Baker v. Coxe*, C.A. No. 93–57956, (Mass.Sup.Ct. Dec. 22, 1994). *See Koelsch v. Town of Amesbury*, 851 F.Supp. 497, 499 (D.Mass.1994) (matters of public record may be taken into account in determining whether to grant a motion to dismiss under Fed. R.Civ.P. 12(b)(6)).

The catalyst for this dispute was a proposed pier construction project on the northern end of Clark's Island, a ninety-acre island located in Plymouth Harbor, Massachusetts, which is also a heronry site. The Bakers first bought property there—a summer residence—in 1979. Seven years later, in 1986, the Bakers bought an additional sixteen acres. These additional acres were put into a forestry trust in August of 1987. The purpose of the trust was to protect Clark's Island from development and to operate a tree farm. From 1989–91, the Bakers bought an additional ten acres. In 1992, the forestry trust was amended to include the additional purchases, bringing the total acreage in the trust to twenty-six acres.

Subsequent to their Clark's Island land purchases—and it is unclear whether or not the reference date here is 1979 or 1986—the Bakers allowed members of the Manomet Bird Observatory ("MBO") to study the local heronry on the island. However, in 1989, the Massachusetts Legislature considered passage of legislation (Bill # 1105) that would have classified a tract of land, including the Bakers' property as an Area of Critical Environmental Concern ("ACEC"). Land situat-

ed in an ACEC would be subjected to use-restrictions and, as such, would decrease in value. When the Bakers, who were opposed to the legislation, learned that the MBO supported it, they denied the organization further access to their Clark's Island property.

Approximately two years later, on or about May 15, 1991, the Bakers filed an application with the Army Corps of Engineers to construct a pier on the northern end of Clark's Island. On June 4, 1991, Grant Kelly of the Army Corps of Engineers, informed the Bakers' project manager, Robert Alvarez, that the Army Corps would issue a Letter of Permission authorizing the Bakers to proceed with the construction of the pier. This was followed by a letter from Karen Kirk Adams on August 28, 1991, reiterating the Army Corps' intention to issue a Letter of Permission for the pier project.

Subsequent to the Bakers' filing an application with the Army Corps, however, the EOEA Defendants, in May of 1991, initiated a review of the project. On September 17, 1991, Defendant Copeland of the EOEA informed Kelly that he needed additional time to investigate the Bakers' project and requested that the Army Corps not issue a Letter of Permission. The Army Corps granted Copeland's request and consequently informed the Bakers' project manager that the project was too controversial for a Letter of Permission and therefore a Public Notice would be issued. On September 26, 1991, the Army Corps issued a Public Notice describing the pier project. The Public Notice sought public comment in order to evaluate properly the pier permit application. The comment period closed on October 28, 1991.

In the course of their review, the EOEA Defendants made a determination that the Bakers' pier permit application should be opposed. To bolster their position, the EOEA Defendants sought scientific support from Dr. Katharine Parsons, an authority on the heronry located on Clark's Island and an employee of the MBO. On October 23, 1991, Dr. Parsons responded with a letter detailing the historical and regional significance of the Clark's Island heronry site.[3] The letter fo-

---

3. The Bakers sued Dr. Parsons, alleging that the October 23 letter contained false and defamatory

cused on the environmental impact of the Bakers' tree farming activities. The EOEA disseminated Dr. Parsons' letter to numerous federal and state agencies as well as citizens of the Commonwealth. In addition, the EOEA Defendants communicated with other state agencies and private organizations in order to gain support for bringing the pier project under review of the Massachusetts Environmental Protection Act ("MEPA").[4]

The Bakers assert that their pier project was below the specified threshold criteria which would have required them to submit an Environmental Notification Form ("ENF") and therefore they were categorically excluded from review under the MEPA. *See* 301 C.M.R. § 11.26(7)(b)(3). However, even a project that does not meet the threshold criteria for automatic review under MEPA may be brought within the purview of MEPA under its Fail–Safe provision. *See* 301 C.M.R. § 11.26; 301 C.M.R. 11.03(6). Under the Fail–Safe provision set forth in 301 C.M.R. § 11.03(6), there are three procedural avenues for the Secretary to require the submission of an ENF, thus initiating MEPA review of a project that does not otherwise meet review thresholds.[5] An ENF must be submitted under the Fail–Safe: (1) upon request of two or more agencies, or (2) upon request of ten or more persons, or (3) at the initiative of the Secretary.

On October 26, 1992, ten members of the Massachusetts Audubon Society submitted a signed request to the Secretary of Environmental Affairs asking her to require an ENF for the pier project under MEPA. As a basis for their Fail–Safe request, they used information provided to them by the EOEA Defendants. It is the Bakers' contention that since two agencies did not request a review, the EOEA Defendants organized ten people to request MEPA review and that those ten people would not have made the request had they not been solicited by the EOEA Defendants.

On November 3, 1992, Assistant Secretary Janet McCabe notified the Bakers of the Fail–Safe request and requested additional information on the proposed pier project. On December 11, 1992, the Bakers' counsel notified Secretary Tierney that he was investigating alleged misconduct in connection with the Bakers' pier permit application and requested an extension of time to respond to the November 3, 1992, notification of the Fail–Safe. On December 21, 1992, Secretary Tierney denied the request for additional time. Thereafter, Secretary Tierney granted the Fail–Safe request and subsequently required submission of an ENF by the Bakers.

In response to the Secretary Tierney's notification that the Fail–Safe was invoked, the Bakers' project manager, Robert Alvarez, sent a letter of rebuttal dated January 21, 1993. In that letter, Alvarez requested Secretary Tierney to reconsider her decision. In addition, he furnished detailed information relative to the alleged misconduct of other EOEA Defendants. Secretary Tierney referred the matter to Assistant Secretary Janet McCabe. The Bakers contend that this was inappropriate because they had registered previous complaints about McCabe's conduct as well. One month later, on February 26, 1993, Alvarez sent another letter to Secretary Tierney, reiterating the Bakers' concerns.

Nonetheless, on June 23, 1993, the Bakers duly submitted to the Secretary an ENF which was published in the Environmental Monitor on July 9, 1993. One month later, on August 9, 1993, Secretary of Environmen-

---

statements. Following the initiation of this suit, Dr. Parsons requested and received assistance from the EOEA Defendants. On January 11, 1996, in *Baker v. Parsons*, C.A. No. 93–3212, the Superior Court found that the Bakers' lawsuit constituted an impermissible SLAPP (Strategic Litigation Against Public Participation) suit and granted Dr. Parsons' Special Motion to Dismiss pursuant to M.G.L. c. 231, § 59H.

4. The Bakers also allege that the Defendants knowingly made malicious and false allegations to Christopher Dowd, an officer of the United

States Fish and Wildlife Service with respect to a violation of the Migratory Bird Act as well as requesting that state and local revenue officials investigate the Bakers' tree farming activities because they were a "tax dodge."

5. Submission of an ENF allows the Secretary to determine if an Environmental Impact Report ("EIR")—which is similar to an Environmental Impact Statement ("EIS") required by federal law—should be required.

tal Affairs Trudy Coxe determined in her Certificate on the ENF that the project required the preparation of an Environmental Impact Report ("EIR"). In her Certificate on the ENF, Secretary Coxe required, among other things, that the scope of the EIR include the impact of forestry practices and bird population control.

In response, the Bakers challenged the Secretary's Certificate on the ENF in Massachusetts Superior Court.[6] The Superior Court held that as a matter of law the Secretary did not abuse her discretion by responding to the Fail–Safe request for an ENF made by ten citizens and subsequently requiring the Bakers to file an EIR. The Superior Court did, however, find that the EIR, as required by the Secretary, was overly broad and constituted an abuse of the Secretary's discretion because it required the Bakers to address items which were physically and conceptually distinct from the pier project as well as unnecessarily requiring that the Bakers obtain a recertification of the Forest Management Plan. *See Baker v. Coxe,* C.A. No. 93–57956 (Dec. 22, 1994).

On April 20, 1995, the parties agreed upon and submitted a Judgment which was accepted by the Superior Court. In sum, the Judgment stated that the Secretary may require the Bakers to submit an EIR, provided that it is limited in scope to the Bakers' pier project application for a Chapter 91 License.[7] In addition, the Bakers would file a Notice of Project Change with the Secretary reflecting that the pending application is only for a Chapter 91 License. The Secretary then would reevaluate whether the change affected the environmental consequences of the project, and thus whether or not it warranted the submission of an EIR.

On August 4, 1995, the Bakers submitted to Secretary Coxe a Notice of Project Change as required by the Judgement. In

response, on September 21, 1995, Secretary Coxe issued a Certificate of the Secretary of Environmental Affairs on the Notice of Project Change wherein she found that no further review of the Bakers' pier project under MEPA was required.

Since then, however, the Army Corps of Engineers has not issued a pier permit to the Bakers. The Army Corps' position is that it will not issue a permit (although it has prepared a draft decision), until it receives a Coastal Zone Management Consistency Certification. The Massachusetts Coastal Zone Management Office ("CZM"),[8] however, contends that it has never received a Consistency Statement concerning the project from the Bakers which would allow it to begin a Consistency Review which, upon completion, would allow it to issue a Consistency Certification. Although maintaining that no Consistency Statement is required, the Bakers assert that, in fact, they did, file a Consistency Statement with their original application to the Army Corps and that a copy of the Consistency Statement was furnished to the CZM as a professional curtesy.

### III. *DISCUSSION*

The standard for dismissal under Fed. R.Civ.P. 12(b)(6) is clear: a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The Court must accept as true all of the allegations made in the complaint and draw all reasonable inferences in Plaintiffs' favor. *Coyne v. City of Somerville,* 972 F.2d 440, 442–43 (1st Cir.1992). On a motion to dismiss, civil rights claims are not subject to heightened standards of plead-

---

**6.** Either concurrently or prior to bringing suit, the Bakers also sought administrative recourse through a correspondence dated December 5, 1994 to the General Counsel of the EOEA in which the Bakers set forth their allegations that the EOEA Defendants unlawfully conspired to interfere with the Bakers' tree farming activities and pier permit application.

**7.** M.G.L. c. 91 governs, among other things, licensing for projects in tidal zones.

**8.** The CZM is one of numerous EOEA agencies charged with establishing coastal zone management policies. Its biggest regulatory function is reviewing permit applications to ensure projects are consistent with those policies.

ing. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993) ("We think that it is impossible to square [a] 'heightened pleading standard' ... with the liberal system of 'notice pleading' set up by the Federal Rules.").

### A. *First Amendment*

■ The Bakers allege that the EOEA Defendants' "manipulation and interference" with the permitting process and the Bakers' forestry activities were in direct retaliation for the Bakers' political opposition to the ACEC legislation and their litigation against the MBO. This claim that the governmental agency delayed plaintiffs' application for a pier permit in unjustifiable retaliation for their expressions of political views is sufficient to state a First Amendment claim. *Nestor Colon Medina & Sucesores, Inc. v. Custodio,* 964 F.2d 32, 40–41 (1st Cir.1992) citing *Chiplin Enterprises v. City of Lebanon,* 712 F.2d 1524, 1527 (1st Cir.1983) (acknowledging that where city failed to comply with its own land laws in delaying building permit, constitutional issues may arise in certain circumstances).

### B. *Substantive Due Process*

■ Substantive due process protects individuals against state actions which are "arbitrary and capricious," or those which, in context, appear "shocking or violative of universal standards of decency." *Amsden v. Moran,* 904 F.2d 748, 753–54, 757 (1st Cir. 1990) (citations omitted), *cert. denied,* 498 U.S. 1041, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991).

In *PFZ Properties, Inc. v. Rodriguez,* the First Circuit discussed substantive due process claims in the context of a denial of a land-use permit:

[R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. The doctrine of substantive due process does not protect individuals from

all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.

928 F.2d 28, 31–32 (1st Cir.1991) (internal quotations and citations omitted), *cert. denied as improvidently granted,* 503 U.S. 257, 112 S.Ct. 1151, 117 L.Ed.2d 400 (1992); *accord Licari v. Ferruzzi,* 22 F.3d 344, 349–50 (1st Cir.1994) (affirming dismissal of § 1983 claims based on revocation of building permits, issuance of enforcement orders and delay of permit amendment); *Custodio,* 964 F.2d at 45 ("We have consistently held that the due process clause may not ordinarily be used [in cases involving] the rights and wrongs of local planning disputes.... we have left the door slightly ajar for federal relief in truly horrendous situations."); *Amsden,* 904 F.2d at 757 (holding that revocation of license did not violate due process rights); *Chiplin Enterprises, Inc.,* 712 F.2d at 1528 (affirming dismissal for failure to state a claim of § 1983 action brought by landowner alleging five-year delay in getting permit after preliminary approval of project had been granted and whose substantive due process claim was premised on "arbitrary and malicious" official action).

■ It is not enough to show that a regulatory board "exceeded, abused or 'distorted' its legal authority." *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). Indeed, even bad-faith violations of state law do not necessarily implicate an unconstitutional deprivation of due process.

■ Still, the Bakers irately contend that the EOEA Defendants engaged in overzealous adversarial tactics to stop them from building their pier and conducting their forestry operation. A similar argument was rejected in *Creative Environments, Inc.,* where a real-estate broker alleged that his plan for a housing development had been

rejected by the local planning board, which had allegedly engaged in arbitrary and adversarial tactics. 680 F.2d at 829–30.

Equally unavailing is the Bakers' assertion that a delay in granting their permit is violative of their substantive due process rights because they had already been constructively granted a permit by the Army Corps of Engineers. *See e.g., Licari,* 22 F.3d at 349 (holding that delay, and revocation of building permit did not violate substantive due process); *Chiplin Enterprises, Inc.,* 712 F.2d at 1524 (rejecting federal claim where plaintiff had received preliminary approval for project but only received final permit after five years of litigation).

■ Furthermore, to the extent that the Bakers' substantive due process claim is based on the alleged retaliation for their political opposition to the ACEC legislation, it is coextensive with their First Amendment claim. *See Custodio,* 964 F.2d at 46 (allegations of political interference with permitting process are coextensive with First Amendment claim and do not necessarily give rise to substantive due process claim); *accord Cabrero v. Ruiz,* 826 F.Supp. 591, 598 (D.P.R.1993); *McCann v. Ruiz,* 802 F.Supp. 606, 615 (D.P.R.1992).

### C. *Equal Protection*

■ The standard for a violation of equal protection is that: 1) the person, compared with others similarly situated, was selectively treated; and 2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Rubinovitz v. Rogato,* 60 F.3d 906, 909–10 (1st Cir.1995). As such, an equal protection claim may be presented in situations "involving gross abuse of power, invidious discrimination or fundamentally unfair procedures." *PFZ Properties, Inc.,* 928 F.2d at 32 (quoting *Creative Environments, Inc.,* 680 F.2d at 832 n. 9).

■ Here, the Bakers allege that they have been treated differently than similarly situated applicants. However, the alleged irregularity or abuse most likely to be con-

sidered invidious or egregious was delaying a permit in retaliation for political views. This is sufficient to state a First Amendment claim, but not a parallel equal protection claim. *Custodio,* 964 F.2d at 44. For the same reasons that the Defendants' conduct is not otherwise so egregious as to state a substantive due process violation, it does not constitute an equal protection claim. *Id.* at 44 n. 5. *Cf. Rubinovitz,* 60 F.3d at 912 (finding enough indication of a malicious orchestrated campaign for personal reasons to trigger equal protection concern about revocation of zoning variance).

### D. *Res Judicata*

■ Defendants assert that this action is barred under the doctrines of *res judicata* and *collateral estoppel.* However, the Bakers are not barred from bringing this claim by virtue of their having previously appealed an adverse administrative determination pursuant to M.G.L. c. 30, § 62H. *See Custodio,* 964 F.2d at 39 n. 3 (allowing plaintiffs to raise constitutional issues in federal court that had not been raised in previous judicial proceedings).

### E. *Qualified Immunity*

With respect to allegations that the EOEA Defendants were motivated by a desire to retaliate against the Bakers for exercising their First Amendment rights (Count VII), the Court *DENIES* the motion to dismiss without prejudice to the ability of the EOEA Defendants to assert their qualified immunity defense at a later point in the proceedings. *Broderick v. Roache,* 996 F.2d 1294, 1297–99 (1st. Cir.1993) (holding that question of intent or motivation with respect to retaliation for exercise of First Amendment rights precluded finding that defendants were entitled to qualified immunity, but left question open for later determination); *Feliciano–Angulo v. Rivera–Cruz,* 858 F.2d 40, 45–47 (1st Cir. 1988) (same).

### F. *Anti-SLAPP Suit*

The Court *DENIES* the state Defendants' special motion to dismiss (Docket No. 8) un-

der the Massachusetts anti-SLAPP [9] suit statute, M.G.L. ch. 231, § 59H, which provides:

"In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or the commonwealth, said party may bring a special motion to dismiss. The court shall advance any such special motion so that it may be heard and determined as expeditiously as possible. The court shall grant such special motion, unless the party against whom such special motion is made shows that: the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

The statutory definition of a "party's exercise of its right of petition" is broadly defined to include "any statement reasonably likely to enlist public participation in an effort to effect" consideration of an issue by an executive governmental body. *Id.*

█ To the extent that the anti-SLAPP statute imposes additional procedures in certain kinds of litigation in state court, it does not trump Fed.R.Civ.P. 12(b)(6). 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1343 (1990) ("State rules of practice do not control any of the purely procedural questions that arise under Rule 12."). Accordingly, this Court will examine the allegations of the complaint under the well-worn standards governing Fed. R.Civ.P. 12(b)(6) motions, not the hybrid statutory procedure in section 59H which is more akin to a summary judgment motion.

█ Defendants argue that the allegations of the complaint demonstrate that the claims are adumbrated by the anti-SLAPP statute because they are merely being accused of procuring others to petition the government in a lawful fashion to address environmental concerns. While enlistment by government officials of others to petition falls within the broad ambit of the anti-SLAPP statutory protection, the claims against the individual state Defendants cannot be so narrowly construed. The Bakers contend that their project was delayed in retaliation for their protected activity in opposing environmental legislation. Although the ten individuals who actually petitioned under Fail–Safe are certainly entitled to the protection of the anti-SLAPP provisions, the individual state Defendants are not in these circumstances. *See Baker v. Parsons,* C.A. 93–3212, Memorandum of Decision (Middlesex Sup.Ct., January 11, 1996) (Rouse J.) (dismissing suit against Dr. Katherine Parsons who was petitioning under the Fail–Safe provision). *Cf. Milford Power Ltd. Partnership v. New England Power,* 918 F.Supp. 471, 489 (D.Mass.1996) (SLAPP suits are "meritless lawsuits filed against individual citizens to intimidate them into silence.").

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the state defendants' motion to dismiss for failure to state a claim (Docket No. 4 & 9) is *ALLOWED* with respect to Count I (due process and equal protection) and *DENIED* with respect to Count VII (the first amendment). In addition, the Special Motion to Dismiss under M.G.L. c. 231 § 59H (Docket No. 8 & 10) is *DENIED.* The Court is denying without prejudice to dismiss the remaining pendent state law claims until it determines whether the First Amendment claim should be dismissed based on a summary judgment record, after discovery. The motion for a more definite statement (Docket No. 11) is *DENIED.*

---

**9.** SLAPP is an acronym for Strategic Litigation Against Public Participation.