**STUBORN LIMITED PARTNERSHIP,**
**Shoestring Properties, Inc.**
**Plaintiffs,**

v.

**Frederick L. BERNSTEIN, and**
**Iris Bernstein Defendants.**

**No. 02–CV–11466–MEL.**

United States District Court,
D. Massachusetts.

Feb. 6, 2003.

Paul Revere, III, Law Offices of Paul Revere, III, Centerville, for Stuborn Limited Partnership, Shoestring Properties, Inc., Plaintiffs.

James S. Singer, Jonathan D. Friedmann, Rudolph Friedmann, LLP, for Frederick L. Bernstein, Iris Bernstein, Defendants.

## MEMORANDUM AND ORDER

LASKER, District Judge.

This case is about land use and free speech. A developer, Stuborn Limited Partnership, and its general partner, Shoestring Properties, Inc. (plaintiffs), filed the instant complaint against Frederick and Iris Bernstein, a married couple. Since July 6, 1992, the Bernsteins have owned a condominium in the Cape Codder condominium complex located in Falmouth, Massachusetts, although they reside in Rivervale, New Jersey. Originally plaintiffs filed this case in Suffolk Superior Court, but on July 19, 2002, the Bernsteins removed the action to federal district court, relying on diversity between the parties.

The Bernsteins move to dismiss under the Anti–Strategic Litigation Against Public Participation (Anti–SLAPP) statute, M.G.L. ch. 231, § 59H.[1] For the reasons explained below, the special motion is DENIED.

## I. Background

In 1986, Intercontinental Developers, Inc. (plaintiffs' predecessor), applied for a special permit from the Falmouth Zoning Board of Appeals to redevelop the Cape Codder Hotel and its ancillary buildings into a residential condominium complex, including the "Main Building." This permit was granted in June 1986. The condominium complex was completed and established by Master Deed on October 16, 1989.

The Master Deed contained several key provisions relevant to the matter at hand. First, it established a trust, the Cape Codder Condominium Trust, to manage and administer the common areas of the condominium complex. Second, it established that the Developer (now plaintiffs[2]) had until October 16, 1999, to construct the Main Building. Perhaps most importantly, the Master Deed also reserved the "right and power, without the consent of any other Unit Owner" (such as the Bernsteins) to construct the Main Building under the Special Permit.

Pursuant to the special permit and Master Deed, the deadline for construction of the Main Building was October 16, 1999.

---

1. The Bernsteins' motion to dismiss also argues res judicata, ineffective service of process, and failure to state a claim upon which relief may be granted. At the motion hearing on January 31, 2003, the parties agreed that the issue of process was moot. The Bernsteins also orally requested that their motion to dismiss as to res judicata and failure to state a claim be dismissed without prejudice pending the Court's decision on the Anti–SLAPP motion. Accordingly, this order deals only with the Anti–SLAPP application.

2. In May 1996, Intercontinental assigned the remaining development rights provided by the Master Deed to Cape Codder Enterprises, Inc., and in January 1997, Cape Codder Enterprises, Inc. assigned the remaining developing rights to Stuborn.

It is an understatement to remark that the Bernsteins, along with other residents, including the Cape Codder Condominium Trust Trustees (Trustees), strongly opposed the construction, and that the Bernsteins in particular left no path to legal recourse unexplored. That is, a serious campaign to stop the construction of the Main Building ensued, allegedly lead by Frederick Bernstein (a lawyer).

There is no dispute that the Bernsteins challenged the legality of the Main Building Construction in various forums, when possible appealed the consistently adverse rulings, and failed to obtain a favorable ruling at any point along the way. There is no need, therefore, to restate the tedious details of the litigation history, but the following catalogue of the Bernsteins' activities illustrates the issues at play: in 1997 the Trustees unsuccessfully challenged the special permit to the Falmouth building commissioner; Frederick Bernstein appealed to the Land Court; Frederick Bernstein filed first and second amended complaints in Land Court in 1999; Frederick Bernstein appealed to the Massachusetts Appeals Court in 1999; Frederick Bernstein appealed to the Falmouth Conservation Commission (FCC) pursuant to the Wetlands Protection Act (WPA) in 1998, and requested review by the Department of Environmental Protection (DEP) and further appeal in 1998; and commenced a mandamus and preliminary injunction action in Barnstable Superior Court in 1999.

In spite of the Bernsteins' campaign to halt the Main Building construction, no agency, board or court agreed with the Bernsteins that the Main Building violated any laws. Accordingly, the Main Building has been completed, and plaintiffs have filed this suit alleging abuse of process, breach of contract, breach of deed covenant, injurious falsehood, tortious interference with contractual relations and advantageous business relationships, slander of title, and civil conspiracy. Plaintiffs contend that the Bernsteins' litigious behavior caused an eighteen month delay in the construction of the Main Building, costing them over $350,000 for increased construction costs, $250,000 for additional expenses and legal costs, and more than $75,000 for building material costs, and damages to their reputation.

## II. Bernsteins' Special Motion

In 1994 the Massachusetts Legislature enacted the Anti–SLAPP statute, which, according to its preamble, was designed to protect "full participation by persons and organizations and robust discussion of issues before legislative, judicial, and administrative bodies and in other public fora," from "lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *See* 1994 House Doc. No. 1520. According to the Supreme Judicial Court (SJC), the paradigm Anti–SLAPP cases are "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Duracraft Corp. v. Holmes Products Corp.*, 427 Mass. 156, 161, 691 N.E.2d 935, 940 (1998).

Codifying the aims of protecting citizens from a David and Goliath power difference, the statute establishes "special" procedures for victims of strategic litigation against public participation:

> in any case in which a party asserts that the civil claims ... against said party are based on said party's exercise of its right of petition under the constitution said party may bring a special motion to dismiss. The court shall advance any such special motion, unless the party against whom such special motion is

made shows ...:(1) that the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability defense is based. M.G.L. ch. 231, § 59H.

Characterizing the instant suit as a classic example of a large developer deploying a lawsuit against a concerned citizen as a means to stifle public participation, the Bersteins move to dismiss under the Anti–SLAPP law. In response the plaintiffs contend that the Anti–SLAPP procedures cannot be enforced in a federal court under the principles established in *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. *See e.g., Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), (state procedural rules do not trump Federal Rules of Civil Procedure). Further, plaintiffs reject the Bernsteins' invocation of the Anti–SLAPP statute, asserting that the Bernsteins' "petitioning activity" is not immunized by the state law. In essence, the plaintiffs allege that the Bernsteins' litigious behavior is not covered by the Anti–SLAPP statute because it was fueled out of self-interest to (1) delay the Main Building construction beyond the 1999 deadline and/or (2) extract money from plaintiffs.

The question whether the Anti–SLAPP statute is a state procedural rule, and therefore, inapplicable in diversity proceedings, has not been answered by the First Circuit. However, at least one Massachusetts District Judge has held that the Federal Rules of Civil Procedure, rather than the Anti–SLAPP burden shifting procedures, control such a case as this. *Bak-*

*er v. Coxe* 940 F.Supp. 409, 417 (D.Mass. 1996). In denying the Anti–SLAPP special motion, the *Baker* Court provided:

> To the extent that the Anti–SLAPP statute imposes additional procedures in certain kinds of litigation in state court, it does not trump Fed.R.Civ.P. 12(b)(6). 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1343 (1990) ("State rules of practice do not control any of the purely procedural questions that arise under Rule 12."). Accordingly, this Court will examine the allegations of the complaint under the well-worn standards governing Fed.R.Civ.P. 12(b)(6) motions, not the hybrid statutory procedure in section 59H which is more akin to a summary judgment question.

*Id.* at 417.

Respectable arguments can be made either that the Anti–SLAPP statute is substantive or that it is procedural. The plain language of the statute reflects procedural mandates that rearrange the course of litigation as prescribed by the Federal Rules. For example, under the Federal Rules the plaintiff is the master of her complaint; thus, on motions to dismiss as well as motions for summary judgment, inferences are to be made and facts construed in her favor. The Supreme Court's discussion of how to decide a defendant's motion to dismiss demonstrates the benefit of the doubt a plaintiff enjoys in the early stages of federal litigation:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the plead-

ings that recovery is very remote and unlikely but that is the test.

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Quite differently, the Anti–SLAPP statute shifts these presumptions and authorizes defendants in a SLAPP suit to file a special motion to dismiss in the infancy of a lawsuit. Under the statute, a judge shall grant ("advance") the motion, "unless the party against whom such special motion is made shows that (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party." *Fabre v. Walton,* 436 Mass. 517, 520, 781 N.E.2d 780, 783 (Mass. 2002).

In light of the competing procedures, I am persuaded that the Anti–SLAPP statute's special motion provision is predominantly procedural in nature, and that it directly conflicts with the Federal Rules of Procedure. Indeed, the SJC itself has described the Anti–SLAPP statute as procedural. *See e.g., Duracraft Corp. v. Holmes Products Corp.,* 427 Mass. 156, 161, 691 N.E.2d 935, 939 (Mass.1998) ("the act ... provides a *procedural* remedy for early dismissal of the disfavored SLAPP suits") (emphasis added); *Fabre v. Walton,* 436 Mass. 517, 520, 781 N.E.2d 780, 783 (Mass. 2002) ("the protections afforded by G.L. c. 231, § 59H, include a *procedural* remedy that permits the defendant in a SLAPP suit to file a 'special motion'") (emphasis added).

Because of the collision between the federal and state procedures noted above, in a diversity action the Federal Rules of Civil Procedure supplant the state Anti–SLAPP procedures as the Supreme Court instructed in *Hanna v. Plumer,* 380 U.S. 460, 463–465, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

Accordingly, the special motion to dismiss under the Anti–SLAPP statute is denied.

### III.

Because the procedures provided in the Anti–SLAPP statute conflict with the Federal Rules of civil procedure, it is unnecessary to reach the merits of the Bernsteins' motion. The expedited nature of the Anti–SLAPP procedures—which as noted above differs significantly from the Federal Rules of Civil Procedure framework—has the obvious drawback of pushing the court to make factual findings and legal conclusions sometimes prematurely. The parties dispute the motives animating the Bernsteins' enduring campaign against the construction of the Main Building. Such disputes over motive are inherently fact-laden; therefore, it is preferable not to attempt to resolve them on the scant evidence of record at this time.

For the reasons stated above, the special motion to dismiss is DENIED.

It is so ordered.