714 F.2d 1184
 Wilfred CLOUTIER, et al., Plaintiffs, Appellants,
v.
The TOWN OF EPPING, et al., Defendants, Appellees.
Wilfred CLOUTIER, et al., Plaintiffs, Appellees,
v.
The TOWN OF EPPING, Defendant, Appellee.
Robert J. Chamberlain, Roger E. Gauthier, Brendan Splaine
and Robert K. Dodge, Defendants, Appellants.
Wilfred CLOUTIER, et al., Plaintiffs, Appellees,
v.
The TOWN OF EPPING, Defendant, Appellant.
Wilfred CLOUTIER, et al., Plaintiffs, Appellees,
v.
The TOWN OF EPPING, Defendant, Appellee.
Patrick Jackson, Defendant, Appellant.
Wilfred CLOUTIER, et al., Plaintiffs, Appellees,
v.
The TOWN OF EPPING, et al., Defendants, Appellees,
Roger Vogler, Dorothy Hall, Richard Sanborn, William
Callaway and Harold LaPierre, Defendants, Appellants.
 Nos. 82-1800, 83-1094, 83-1095, 83-1101 and 83-1138.
 United States Court of Appeals,
First Circuit.
 Argued June 7, 1983.
Decided Aug. 5, 1983.
 
 Robert F. Sylvia, Boston, Mass., with whom Roderick MacLeish, Jr., Alfred W. Ricciardi, Fine & Ambrogne, Christopher P. Sullivan, Carolan & Sullivan, Boston, Mass., Wilfred L. Sanders, Jr., and Sanders & McDermott, Hampton, N.H., were on brief, for Wilfred Cloutier, et al.
 Ronald L. Snow, Concord, N.H., with whom James E. Morris, and Orr & Reno, P.A., Concord, N.H., were on brief, for Richard Sanborn, Roger Vogler, Dorothy Hall, William Callaway and Harold LaPierre.
 Michael J. Donahue, Exeter, N.H., with whom Kearns, Colliander, Donahue & Tucker, P.A., Exeter, N.H., Peter J. Loughlin, Portsmouth, N.H., were on brief, for Town of Epping.
 John W. Barto, Mark H. Puffer, and Barto & Gfroerer, Concord, N.H., on brief for Patrick Jackson.
 G. Wells Anderson, Charles P. Bauer, and Hall, Morse, Gallagher & Anderson, Concord, N.H., on brief for Robert J. Chamberlain, Roger E. Gauthier, Brendan Splaine, and Robert K. Dodge.
 Before CAMPBELL, Chief Judge, McGOWAN,** Senior Circuit Judge, and SELYA,*** District Judge.
 LEVIN H. CAMPBELL, Chief Judge.
 
 
 1
 This "Epic of Epping" concerns a dispute over the development of a mobile home park in Epping, New Hampshire. Wilfred and Mary Cloutier, and Pine & Pond, Inc. are developers who brought the present action in the district court claiming that Epping and several of its officers violated their civil rights by revoking a sewage connection permit, denying them other permits, and engaging in a pattern of harassment aimed at retarding or destroying their development plans. Concluding that plaintiffs had failed to raise a substantial federal question, the court below dismissed the case for lack of jurisdiction. Although we cannot say that the court lacked jurisdiction, we affirm the dismissal.
 
 I.
 
 2
 We present the facts in a light most favorable to appellants. Epping, New Hampshire is a town with a population of about 3,000. Zoning, land use, and development have long been heated issues in the town. In the mid-1960's the Cloutiers began making plans to develop a large mobile home park in Epping. They obtained a road entrance permit in 1965 and approval from the Planning Board in 1968.[1]
 
 
 3
 On April 27, 1972 the Cloutiers applied for and received from one of the three sewer commissioners a permit to connect the mobile home park to the town's newly constructed sewage system. On May 4, 1972 the other two sewer commissioners, defendants Robert Chamberlain and Brendan Splaine, met informally and revoked this permit. The Cloutiers were invited to discuss the revocation at the commission's next meeting several days later.
 
 
 4
 Following revocation, the Cloutiers filed an action in Rockingham County Superior Court for a writ of mandamus. Plaintiffs contend that it was only in the course of the litigation that they learned the commission's real reasons for revoking the permit: a 1968 zoning ordinance prohibiting mobile homes in the town's "sewered zone," and commission regulations forbidding the connection of structures more than 200 feet from the sewer main. Plaintiffs further allege that defendants gave erroneous and perjured testimony at the trial before the Superior Court. The court found for the town, and plaintiffs appealed.
 
 
 5
 While their appeal was pending before the New Hampshire Supreme Court, plaintiffs continued to attempt to obtain the permit from defendants. At the direction of the sewer commission, the Cloutiers brought the issue before the March 1975 town meeting. The meeting passed an article requiring the connection of the Cloutiers' park to the sewer system. The meeting also defeated a proposed amendment to the zoning ordinance put forward by the Planning Board which would have limited the number of mobile homes in Epping.
 
 
 6
 Despite the Cloutiers' victories before the town meeting, defendants continued to oppose the connection of Pine & Pond to the sewer system. The sewer commission told plaintiffs that another town meeting vote would be required before the permit would be granted and that Planning Board approval would also be necessary. The Planning Board, meanwhile, posted another amendment to the town's zoning laws that was similar to the one that had just been defeated by the meeting.
 
 
 7
 On May 29, 1976 the New Hampshire Supreme Court rendered its decision. Cloutier v. Epping Water and Sewer Commission, 116 N.H. 276, 360 A.2d 892 (1976). The court ruled that the 1968 zoning ordinance forbidding mobile homes within the town's sewered zone was invalid because the zone had not been adequately defined. The court held that the town had to connect the mobile homes that were within 200 feet of the sewer system. Id. at 279, 360 A.2d at 895. But it also held that the sewer commission regulation barring the connection of structures beyond 200 feet from the main was valid and that the town meeting lacked authority to override the commission. Id. at 280, 360 A.2d at 896. The court refused to decide whether or not zoning was ever validly enacted in Epping, finding that there was no reason why the "newly discovered evidence" put forward by the Cloutiers could not have been presented to the Superior Court. Id. at 278, 360 A.2d 892.
 
 
 8
 Following the New Hampshire Supreme Court's decision, the dispute continued to heat up and expand in several new directions. First, the Cloutiers again brought the issue before the town meeting which once again voted in favor of their position. Defendants, however, still refused to grant the permit. Then, on August 3, 1976, defendants sought an injunction from the Rockingham County Superior Court against the Cloutiers' development of a second mobile home park in Epping on the ground that the lot was substandard. Following the filing of the state action, Wilfred Cloutier commenced the present case in federal district court, charging that the state action and the previous denials of the sewer permit for Pine & Pond constituted a deprivation of property without due process, a denial of equal protection, and a violation of the privileges and immunities clause of the fourteenth amendment. The complaint sought damages and an injunction against the Superior Court action. On November 3, 1976 the district court, citing the Younger doctrine, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), denied Cloutier's request for a preliminary injunction. The Superior Court action was dismissed in 1978 by a subsequent board of selectmen.
 
 
 9
 The election of new town officials in 1978 led to the Cloutiers' finally obtaining a sewer connection permit and a water connection permit. The day after the permits were issued defendant Roger Gauthier filed a lawsuit to invalidate the appointment of the new commissioner. This action was dismissed by the state court.
 
 
 10
 After receiving the sewer connection permit, the Cloutiers still had to obtain a discharge permit from the New Hampshire Water Supply and Pollution Control Commission (WSPCC). According to plaintiffs, defendants gave false information to the WSPCC, delaying its approval of the permit until July 1981.
 
 
 11
 On April 26, 1977 and again on January 2, 1981, the complaint in the federal action was amended to include Mary Cloutier and Pine & Pond, Inc., as plaintiffs, to add numerous local officials as defendants, and to include new allegations, including ones relating to the events occurring after 1976. Pendent state claims were also added. After the district court denied defendants' various motions to dismiss, the case went forward to trial, with the district court ordering that no additional motions be presented, except those related to evidentiary matters. On September 28, 1981 a jury was empaneled. During the course of the trial, however, the district judge became ill, and a mistrial was ordered. The case was assigned to a different district judge. On July 20, 1982, defendants moved for summary judgment on the basis of the Supreme Court's recent decision in Harlow v. Fitzgerald, --- U.S. ----, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and this court's decision in Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). The district court then continued the trial and ordered briefings and arguments on the motions for summary judgment. On September 16, 1982 the district court dismissed the complaint for lack of federal jurisdiction.
 
 II. JURISDICTION
 
 12
 While we agree with the substance of the district court's analysis, we are not sure that the claims are all so patently frivolous as to warrant dismissal for lack of federal jurisdiction. Complaints should not be dismissed for failing to raise a federal question unless they are "insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit ...." Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974). See also Bell v. Hood, 327 U.S. 678, 682-85, 66 S.Ct. 773, 776-77, 90 L.Ed. 939 (1946); Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, at 1528 (1st Cir.1983).
 
 
 13
 Still, looking at the record--which besides the pleadings includes affidavits, depositions and other supporting papers--in the light most favorable to appellants, we are satisfied, in the words of Fed.R.Civ.P. 56, that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. Because defendants moved below for summary judgment, and plaintiffs had a full opportunity to respond to those motions, we think it proper to affirm the dismissal on that basis. See Wright, Miller & Kane, Federal Practice & Procedure § 2716 (2d ed. 1983); 6 Moore's Federal Practice § 56.27 (1982). Cf. Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524, at 1528 (1st Cir.1983) (affirming case dismissed for lack of federal jurisdiction for failure to state a claim upon which relief can be granted).III. ZONING DISPUTES, DUE PROCESS AND EQUAL PROTECTION
 
 
 14
 Plaintiffs contend that zoning was never validly enacted in Epping, that the New Hampshire Supreme Court held the zoning scheme unenforceable, and that defendants' continued reliance on the zoning laws violated 42 U.S.C. § 1983 by depriving plaintiffs of due process and equal protection of the laws. Plaintiffs further contend that defendants engaged in a number of malicious delaying tactics which impeded plaintiffs' ability to proceed with their development plans. While plaintiffs ultimately achieved many of their goals, they say that defendants deprived them of their property without due process by adding years of delay and extra costs.[2]
 
 
 15
 This is not the first time we have considered claims of this type. In Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), we refused to entertain under section 1983 a claim that local officials had misapplied zoning laws in order to thwart a development project. We assumed that defendants might have engaged in "adversary and even arbitrary tactics," in order to stop plaintiffs' development plans. Id. at 829. We said, however, that " '[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution.' " Id. at 833, quoting Crocker v. Hakes, 616 F.2d 237, 239 (5th Cir.1980) (per curiam), and that
 
 
 16
 Every appeal by a disappointed developer from an adverse ruling by a local ... planning board necessarily involves some claim that the board exceeded, abused or "distorted" its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason. It is not enough simply to give these state law claims constitutional labels such as "due process" or "equal protection" in order to raise a substantial federal question under section 1983.
 
 
 17
 Id. at 833. We recently reaffirmed these principles in Chiplin Enterprises, Inc. v. City of Lebanon, 712 F.2d 1524 (1st Cir.1983). But see Wilkerson v. Johnson, 699 F.2d 325 (6th Cir.1983).
 
 
 18
 Plaintiffs attempt to distinguish Creative Environments and its successors. First, they say the issue here is not the mere misapplication of valid zoning laws, as was the case in Creative Environments and Chiplin, but instead the blatant application of ordinances which defendants knew were totally void. Second, plaintiffs argue, defendants engaged in numerous unlawful tactics that independently violated the Constitution. Among the unlawful actions alleged are the abuse of process, perjury, failing to come forward with material evidence, and giving false information to a state agency about the plaintiffs.[3]
 
 
 19
 The contention that the Epping zoning laws were totally invalid fails to withstand scrutiny. In Cloutier the New Hampshire Supreme Court held that Article II(A) of the Epping zoning regulations, which prohibited placing mobile homes in the sewered zone, was unenforceable because the zone had never been adequately defined. The court never addressed the validity of the remaining provisions of the zoning ordinance. As the ordinance had a severability clause and as severability is the general rule when construing zoning ordinances in New Hampshire, Fernald v. Bassett, 107 N.H. 282, 220 A.2d 739 (1966), it was scarcely an act of lawlessness for defendants to continue relying upon the ordinance's remaining provisions. Cf. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (good faith immunity depends upon an objective assessment of the reasonableness of defendants' actions). Moreover, the state court in Cloutier specifically approved of the revocation of plaintiffs' sewer connection permit, and found that the sewer commission was not bound to connect the Cloutiers' park on the basis of the town meeting votes. 116 N.H. at 280, 360 A.2d at 896. Thus the state court did not unambiguously reject defendants' positions; defendants' actions taken to enforce their interpretations of the governing laws cannot be seen as a gross abuse of power. Compare Roy v. City of Augusta, 712 F.2d 1517, at 1524 (1st Cir.1983).
 
 
 20
 Similarly, plaintiffs' long list of harassing actions reveals not the type of egregious behavior that might violate the due process clause, but rather, for the most part, further disputes over the interpretation of the state and town zoning laws. Plaintiffs contend that defendants maliciously abused state process by commencing an action in Rockingham County Superior Court to enjoin the Cloutiers' development of a second mobile home park in Epping. However, as the Fifth Circuit has stated,
 
 
 21
 "Neither the Fourteenth Amendment nor the Civil Rights Acts purported to secure a person against unfounded or even malicious claims or suits in state courts, especially so when the laws of the state are available and furnished adequate remedies to a person aggrieved."
 
 
 22
 Beker Phosphate Corp. v. Muirhead, 581 F.2d 1187, 1189 (5th Cir.1978), quoting Curry v. Ragan, 257 F.2d 449, 450 (5th Cir.), cert. denied, 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85 (1958). See also Cline v. Brusett, 661 F.2d 108, 112 (9th Cir.1981).
 
 
 23
 Here, plaintiffs made no effort to seek state remedies for the alleged abuse of process. Compare Roy v. City of Augusta, 712 F.2d 1517, at 1524. Moreover, because the suit was brought to enforce the zoning laws, the question whether the prosecution was malicious depends upon the proper interpretation of the state's zoning laws. Thus the malicious prosecution claim is nothing more than a reformulation of plaintiffs' general claim of misapplication of the zoning laws--the very question that we have held not to be cognizable under section 1983.
 
 
 24
 Plaintiffs' charge that defendants gave false information to the New Hampshire WSPCC is similarly a mere rephrasing of the overall zoning law issue. Plaintiffs claim that the defendants falsely told the commission that the Cloutiers' plans did not conform to local zoning regulations and required Planning Board approval prior to obtaining the state permit. Whether or not such statements were false, however, obviously depends upon the validity of defendants' interpretation of the zoning laws. Thus we see no distinction from Creative Environments.
 
 
 25
 Nor do we see any possible federal issue in plaintiffs' claim that defendants violated a duty of good faith by failing to come forward with material evidence in the mandamus action. Even if defendants were under such an obligation under state law, the breach of duty alone would not violate the Constitution. See Creative Environments, 680 F.2d at 833. Under our adversary system, parties in civil trials are normally responsible for obtaining their own evidence, and except, perhaps, under the most unusual circumstances, not presented here, due process is not violated by an adversary's failure to come forward voluntarily with evidence helpful to an opponent.
 
 
 26
 Plaintiffs' perjury charge presents, on its face, a more substantial claim. Nevertheless, we need not decide if the perjury charged here could have violated the due process clause because the Supreme Court has recently held that witnesses are absolutely immune for damages actions under section 1983. Briscoe v. Lahue, --- U.S. ----, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). The Court relied in part upon the concept that "when a private party gives testimony in open court in a criminal trial, that act is not performed 'under color of law.' " Id. at ----, 103 S.Ct. at 1115.
 
 
 27
 The Supreme Court's reasoning in Briscoe compels us to find not only that the individual defendants are absolutely immune for any damages arising from the alleged perjury, but also that the town cannot be liable for the defendants' actions. In Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court held that although a city was a "person" within the meaning of section 1983, it could not be liable on a respondeat superior theory. Id. at 691, 98 S.Ct. at 2036. In order for cities to be liable, the constitutional wrong must be committed pursuant to official policy. Id. Because witnesses always testify in a personal capacity and are not acting under color of law when they testify, Briscoe, --- U.S. at ----, 103 S.Ct. at 1112-13, their perjury cannot, except in the most extraordinary circumstances, be considered to be pursuant to official policy and the basis of municipal liability. We therefore hold that neither the town nor the individual defendants can be held liable for the alleged perjury.[4]
 
 
 28
 The fact that plaintiffs allege many claims does not change the foregoing. It is the nature of the allegations, not their quantity, which is significant. Here, although plaintiffs raise numerous charges, the vast majority merely concern disputes over the town's zoning laws. The rest of the charges either fail to state a federal claim or concern matters for which damages are unavailable.
 
 IV. PROCEDURAL DUE PROCESS
 
 29
 Plaintiffs also seem to contend that defendants deprived them of procedural due process by revoking the original sewer permit without first granting them a hearing.[5]
 
 
 30
 The due process clause of the fourteenth amendment requires that states provide individuals with procedural protections when they are deprived of either their property or their liberty. The type of process that must be afforded varies, however, depending upon the particular situation. See Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1972). Even if we assume that plaintiffs acquired a property right in the sewer connection permit once it was issued, but see Hermer v. City of Dover, 106 N.H. 534, 215 A.2d 693 (1965) (builder has no vested rights in a permit issued under mistake of law or in violation of law), and thus a right to some procedural protections before its revocation, they received here all of the process the Constitution required.
 
 
 31
 Plaintiffs received a written notification of the revocation which invited them to discuss the situation with the commission at its next meeting only three days later. And whether or not the Cloutiers attended that meeting, there are indications in the record that the Cloutiers and their attorney did at some later time discuss the matter with the commission. Following that discussion, the sewer commission reviewed and affirmed the revocation. The Cloutiers then brought an action in state court for a writ of mandamus.
 
 
 32
 These procedures were adequate. Full judicial-type hearings are not required when local boards engage in the quasi-legislative task of granting or revoking zoning or similar types of permits. O'Neill v. Town of Nantucket, 711 F.2d 469 (1st Cir.1983). Moreover, the permit here had been in plaintiffs' possession only a few days before it was revoked. And plaintiffs were not shown to have acted in reliance on it. Cf. Henry & Murphy, Inc. v. Town of Allenstown, 20 N.H. 910, 424 A.2d 1132 (1980) (zoning rules may be changed to developer's detriment except where the developer has made substantial construction in reliance upon old rules). Given plaintiffs' limited interest and the risk they might act in reliance upon the permit and thus gain a greater interest in it as time went on, defendants were entitled to revoke without the delay of a prerevocation hearing.[6] The prompt, informal proceedings offered by the town coupled with the judicial review provided by the state courts satisfied the requirements of the due process clause. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1972); O'Neill v. Town of Nantucket, 711 F.2d 469 (1st Cir.1983); Creative Environments, 680 F.2d at 830.[7]
 
 V. FIRST AMENDMENT CLAIMS
 
 33
 Plaintiffs also advance, belatedly, a first amendment ground for recovery. They tell us they were denied a sewer connection permit, and were subjected to other forms of harassment, in retaliation for the Cloutiers' vociferous and pointed political opposition to defendants and their anti-development positions.
 
 
 34
 Plaintiffs never explicitly pressed this claim below as a separate ground for relief. Even if their quiescence did not amount to a waiver, see Johnston v. Holiday Inns, Inc., 595 F.2d 890 (1st Cir.1979), we think it raises no genuine issue. In order to surmount a supported motion for summary judgment, plaintiffs were required to set forth specific facts showing a triable issue. See Packish v. McMurtrie, 697 F.2d 23, 26-27 (1st Cir.1983); Manego v. Cape Cod Five Cents Savings Bank, 692 F.2d 174 (1st Cir.1982). Plaintiffs have not done so.
 
 
 35
 Although they engaged in years of discovery and compiled a vast record, plaintiffs point only to Wilfred Cloutier's own affidavit in support of their first amendment claim. The only statements in the affidavit relevant to such a claim are those attesting that Cloutier had engaged in political opposition to defendants and, as a member of the Epping Betterment Committee, had participated in circulating cartoons which portrayed defendants in an unflattering light. From this, plaintiffs wish us to infer that defendants fought the Cloutiers' development plans in retaliation for Wilfred Cloutier's political activity. However, the Cloutiers' development plans were the subject of a political controversy in which all parties were engaged. It is difficult to infer that defendants were motivated by dislike of plaintiffs' exercise of free speech rather than simply by disapproval of the proposed development. The former inference is less obvious than that of racial discrimination in Manego v. Cape Code Five Cents Savings Bank, 692 F.2d 174 (1st Cir.1982), in which we affirmed the district court's grant of summary judgment.[8]
 
 
 36
 We have searched the record with some care and have found nothing which suggests that this case concerns valid first amendment issues. We therefore hold that summary judgment is appropriate. See Packish v. McMurtrie, 697 F.2d at 23; Manego v. Cape Cod Five Cents Savings Bank, 692 F.2d at 174.
 
 VI. FIFTH AMENDMENT CLAIMS
 
 37
 Plaintiffs raise two fifth amendment claims. First, they argue that defendants inversely condemned their land by posting proposed zoning regulations that had the effect of lowering the land's value until the ordinances were defeated by the town meeting. Second, they argue that the laying of sewer pipes under the Cloutiers' land constituted a taking for which they have not been justly compensated. Neither claim is one on which plaintiffs may prevail.
 
 
 38
 Damages--the only relief now open to plaintiffs for their inverse condemnation claims--are not ordinarily available in a federal court for such claims. Citadel Corp. v. Puerto Rico Highway Authority, 695 F.2d 31 (1st Cir.1982); Pamel Corp. v. Puerto Rico Highway Authority, 621 F.2d 33 (1st Cir.1980). We know of no reason to alter that rule here, especially where the town's legislative body, the town meeting, ultimately voted down the proposed regulations.
 
 
 39
 Plaintiffs eminent domain claim presents a slightly different situation. Defendants admit that a taking occurred in 1970 and that plaintiffs have not yet received just compensation. However, after the instant case was commenced, the town instituted proceedings before the New Hampshire Eminent Domain Commission and issued a bond to secure plaintiffs' judgment. Plaintiffs, however, sought a continuance of the state action in order that the matter be litigated in the federal forum. That continuance was granted.
 
 
 40
 These proceedings reversed the proper roles of the federal and state courts. Plaintiffs' federal claim depends upon their inability to obtain just compensation from the town. Had the state proceedings gone forward, plaintiffs, presumably, would have obtained just compensation and would have no federal claim.[9] Plaintiffs should not be able to manufacture a federal claim by continuing the state proceeding.
 
 VII. ATTORNEYS' FEES
 
 41
 On cross-appeal defendants argue that the district court erred in refusing to order attorneys' fees pursuant to 42 U.S.C. § 1988, which empowers the district court to award attorneys' fees to the prevailing party in actions brought under 42 U.S.C. § 1983. We find no abuse of discretion.
 
 
 42
 Defendants are entitled to attorneys' fees under section 1988 only when
 
 
 43
 a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.
 
 
 44
 Hughes v. Rowe, 449 U.S. 5, 14-15, 101 S.Ct. 173, 178-179, 66 L.Ed.2d 163 (1980) (per curiam), quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978). Although lacking in merit, we cannot say plaintiffs' claims, when brought, were so patently frivolous as to have required the district court to award fees.
 
 
 45
 We have considered defendants' other arguments on their cross-appeal, including their argument that the court was obliged to make more comprehensive findings, and find them all to be without merit.
 
 
 46
 The judgments of the district court dismissing the complaint and denying attorneys' fees to the defendants are affirmed.
 
 
 
 *
 Of the District of Maryland, sitting by designation
 
 
 **
 Of the District of Columbia Circuit, sitting by designation
 
 
 ***
 Of the District of Rhode Island, sitting by designation
 
 
 [1]
 The Cloutiers allege that the Planning Board was never properly formed
 
 
 [2]
 In their complaint plaintiffs also alleged that defendants engaged in a conspiracy to infringe upon their civil rights in violation of 42 U.S.C. § 1985. The district court dismissed that claim on the basis that plaintiffs failed to allege discrimination on the basis of membership in a suspect class. On appeal plaintiffs have not argued that the district court erred in reaching this conclusion. We hold that plaintiffs have waived their section 1985 claim. See Harris v. Plastics Mfg. Co., 617 F.2d 438, 440 (5th Cir.1980). For similar reasons, plaintiffs have waived their excess taxation claim, and their claims based upon 42 U.S.C. § 1981, the privileges and immunities clause, and state law
 
 
 [3]
 Plaintiffs also argue that defendants used the zoning laws in retaliation for plaintiffs' exercise of their first amendment rights. We consider that argument infra
 
 
 [4]
 Plaintiffs also charge that defendants violated an agreement between the town and the Federal Farmers Home Administration in denying the Cloutiers the sewer connection permit. The breach of such a contract, however, does not create a constitutional violation. See Casey v. Depetrillo, 697 F.2d 22 (1st Cir.1983) (per curiam); Jimenez v. Almodovar, 650 F.2d 363, 370 (1st Cir.1981)
 
 
 [5]
 To the extent that plaintiffs argue that the revocation violated the substantive requirements of the due process clause, they do not state a federal claim. See supra; Creative Environments, 680 F.2d at 833
 
 
 [6]
 Plaintiffs also stress that defendants failed to notify them of the true reasons for the revocation. The revocation letter notified them that the permit was being revoked because the mobile homes were outside of the sewered district. Although this was not the reasoning upon which defendants ultimately prevailed, we see no due process error in defendants pressing other points before the state court
 
 
 [7]
 Even if defendants had violated plaintiffs' due process rights, the claim against the town would be barred on the basis of res judicata since the revocation occurred prior to the state court action and the claim could have been brought there. See Roy v. City of Augusta, 712 F.2d 1517 (1st Cir.1983); Lovely v. Laliberte, 498 F.2d 1261 (1st Cir.), cert. denied, 419 U.S. 1038, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974)
 
 
 [8]
 Below plaintiffs argued that defendants violated section 1983 by speaking out against plaintiffs' development plans. The first amendment protects the defendants as well as the plaintiffs: all of the parties were entitled to engage in the rough and tumble of political debate and action, based on their personal views. Cf. FTC v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1009 (1948) (commission may rule on issue despite the fact that commissioners previously expressed their opinion on the subject); K. Davis, Administrative Law Treatise § 19.2 (1980)
 
 
 [9]
 Plaintiffs contend that they cannot be fully compensated by the state court because the state board cannot order damages for the loss of use and enjoyment of the property since 1971. Whether or not this is a correct interpretation of state law, we see nothing in the record to suggest a triable issue of fact on the question whether the plaintiffs suffered such damages. Plaintiffs, indeed, admit to not knowing that the property was taken until 1976. They could not, therefore, have suffered any loss of use or enjoyment because of the taking