**William M. STEWART, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant.**

**No. CIV.A.05–10753–WGY.**

United States District Court,
D. Massachusetts.

Dec. 1, 2005.

William M. Stewart, Hyannis, MA, pro se.

Eugenia M. Carris, United States Attorney's Office, Boston, MA, for Commissioner of Social Security, Defendant.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

The Claimant, William Stewart ("Stewart"), brings this civil action against the Commissioner of Social Security ("Commissioner") pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). In his Complaint, Stewart claims that the Social Security Administration (the "Agency") should have awarded him a longer period of retroactive

Disability Insurance Benefits ("disability benefits") under Title II of the Act and that the benefits the Agency did award him should have been paid at a greater rate. Compl. [Doc. No. 1] at 1. The Commissioner has moved to dismiss the complaint on both jurisdictional and substantive grounds.

## I. INTRODUCTION

### A. Background [1]

Stewart's health problems began in 1985 while he was working as the manager of a large car dealership in Boston. R. at 30–31. In June of that year, he was admitted to the hospital after complaining of chest pains. *Id.* at 181. Although the source of his condition never was precisely pinned down, one consulting doctor suggested that "[Stewart's condition] has the overall appearance of what may be restrictive pericarditis. This is probably a chronic condition." *Id.* at 127. After four days in the hospital, Stewart checked himself out. *Id.* at 121.

Three years later, in 1988, Stewart began having trouble with his vision. *Id.* at 32. He was admitted to the hospital again and this time diagnosed with "multiple sclerosis with associated bouts of fatigue and optic neuritis." *Id.* at 18, 32, 197. Because of the vision problems and chronic fatigue caused by the disorder, Stewart was forced to resign from his employment at the car dealership. *Id.* at 32–33.

Stewart did not work again until 1994, when he accepted employment as a delivery truck driver for the newspaper *USA Today*. *Id.* at 18, 35. This employment has been described best by the hearing officer who considered his case at the Agency level:

[Stewart] testified credibly regarding work activity after the [disability] onset date. He indicated that he had done work delivering newspapers for USA Today, however, he frequently had others do his work for him because he was incapacitated by symptoms of multiple sclerosis. Moreover, [Stewart's] testimony reveals that the gross monies earned were significantly reduced by costs of running this type of business, including gasoline costs for driving greater than 1500 miles per week, and truck rental costs.

*Id.* at 18. During his employment with *USA Today*, Stewart again endured a prolonged hospital stay, this time while undergoing open heart surgery in late July of 1994.[2] *Id.* at 35, 183. His employment with the paper lasted two years after the heart attack, finally ending in 1996. *Id.* at 65. The record does not reveal any employment from 1996 to the present.

### B. Procedural History [3]

Stewart claims that he filed his first application for disability benefits under Title II of the Act, 42 U.S.C. § 402 et seq., in 1988 and a second application in 1990, *see* R. at 36, 54. According to the Agency's records, however, Stewart filed his first application on February 13, 1996.[4] *Id.* at

---

1. This recitation of facts is taken from the record before the Agency. The propriety of looking at this record on a motion to dismiss is discussed *infra* Part II.A.

2. Stewart explained that he took the job delivering papers, in part, as a way to obtain health insurance so he could have the surgery. R. at 35. He asserted that he did not profit from this position, but it allowed him to

have the surgery and provided him with "cash flow" to pay his credit card bills. *Id.*

3. A timeline of the procedural history of Stewart's claims at the Agency level is included as an appendix to this opinion.

4. The Commissioner does not dispute directly that Stewart filed claims in 1988 and 1990. She explains, however, that the Agency does

3. The 1996 claim was denied in July of 1996 and, according to the Agency, not pursued further. *Id.* Stewart disputes the assertion that he failed to pursue the claim after the initial denial, Letter from William Stewart to Marie Bell of 10/24/05 ("Pl.'s Resp.") [Doc. No. 11] at 2, but fails to produce any evidence that he sought further administrative review.

On November 18, 1997, Stewart filed another application for disability benefits, as well as a claim under Title XVI of the Act, 42 U.S.C. § 1381 et seq., for Supplemental Security Income Benefits ("supplemental benefits"), R. at 87. The Agency found him eligible for supplemental benefits, but again denied him disability benefits on July 31, 1998. *Id.* at 3, 101. The Agency based its decision on its finding that Stewart's job delivering papers for *USA Today* constituted Substantial Gainful Activity after December of 1995, the month he was last insured for the benefits. *See id.* at 105. Stewart requested reconsideration on October 1, 1998. *Id.* at 106. The Agency affirmed the denial on November 7, 1998. *Id.* at 107.

Stewart did not pursue this application any further until January 29, 2001, when it appears from the record that he contacted the Agency with a request to reopen. *Id.* at 81–82. On March 13, 2001, the Agency informed Stewart that it could not reopen the application on the argument he presented, but suggested that he might suc-ceed in reopening the application if he presented additional evidence that he had others do his work for him at *USA Today.* *See id.* at 82.

On May 8, 2001, as a result of the Agency's refusal to reopen the November 18, 1997 application, Stewart filed his third and final application for disability benefits. *Id.* at 48. The Agency denied this application on May 13, 2001, this time asserting that Stewart did "not qualify for disability benefits because [he had] not worked long enough under Social Security." [5] R. at 51. Stewart requested reconsideration of this decision on May 31, 2001. *Id.* at 54. The Agency affirmed its decision on June 8, 2001. *Id.* at 55.

This time, however, Stewart decided to pursue his application further. On June 25, 2001, he filed a request for a hearing before an Administrative Law Judge ("hearing officer"). *Id.* at 58. The hearing was held on August 14, 2002. *Id.* at 23. On September 25, 2002, the hearing officer released a decision on Stewart's application granting the disability benefits. *Id.* at 21. The hearing officer first found that Stewart had met the Agency's definition of "disabled" since April 1, 1990. *Id.* at 18. Additionally, he found that Stewart's job delivering papers for *USA Today* did not constitute Substantial Gainful Activity under Agency rules, and he ordered that benefits would "be payable based on

not have a record because of an administrative policy allowing for destruction of denied application records "anywhere from six to twelve months after a decision is made at the highest level of administrative review requested." Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") [Doc. No. 9] at 8 (citing Annual Publication of Notices of Systems of Records, 47 Fed.Reg. 45589–01 (Oct. 13, 1982)). For the purposes of this Memorandum, the Court will assume that the earlier applications were, in fact, filed and then denied by the Commissioner.

5. This explanation is the functional equivalent of the Agency's reasons for denying Stewart's earlier claims. Because the Agency had determined that Stewart had engaged in Substantial Gainful Activity after the date he was last insured for disability benefits (December of 1995), he would have had to accumulate additional work credits to have been eligible again in 2001. R. at 104.

[Stewart's prior] application for disability insurance benefits filed on November 18, 1997." *See id.* at 20. He based his authority to reopen the earlier application on 20 C.F.R. §§ 404.988, 404.989. *Id.* at 20. Although this decision was considered "[f]ully [f]avorable" to Stewart, the announcement sent with it notified Stewart of his right to appeal to the Social Security Appeals Council within sixty days. *Id.* at 14–15.

On November 2, 2002, the Agency sent Stewart a letter notifying him that he was eligible to receive future benefits and retroactive benefits starting from November of 1996. *Id.* at 174. The letter specified the amount of the future benefits and the date on which Stewart would begin receiving those benefits. *Id.* The letter also informed him, however, that the Agency would withhold the retroactive benefits until it determined whether they would have to be reduced by the amount he received in supplemental benefits for those years.[6] *Id.*

On November 29, 2002, before the Agency determined the amount of the retroactive benefit reduction, Stewart requested Appeals Council review of the hearing officer's initial decision, claiming that he should have received retroactive benefits from 1988 or 1990, when he claims he filed his first two applications for disability benefits.[7] R. at 172–73.

On October 28, 2003, prior to the Appeal Council's response to Stewart's request for review of the hearing officer's decision, the Agency followed up with another letter notifying Stewart of the amount of his monthly benefit payments and of the reduction of his retroactive disability benefits by $14,426.45. Pl.'s Resp., Attach. 2, at 1. This letter included notice that Stewart could request reconsideration of the determinations in the letter within sixty days. *Id.* at 2. Stewart did not pursue this decision any further.

The Appeals Council denied Stewart's November 29, 2002 request for review on August 18, 2004, stating that his reasons for disagreement with the decision and the additional evidence he presented did "not provide a basis for changing the [hearing officer's] decision." R. at 9–10. This correspondence also included a notice that the hearing officer's decision would be the final decision of the Commissioner of Social Security in his case and provided instructions on filing a civil action in federal district court. *Id.* at 9–11.

Stewart subsequently requested, and was granted, two separate extensions of time beyond the normal sixty-day limit to file a civil action. *Id.* at 3, 5–7. The Agency granted the second of these extensions on February 11, 2005. *Id.* at 3. It provided that Stewart would have sixty days from his receipt of that notice (presumed to be five days after transmission of

---

6. The process of reducing retroactive disability benefits to account for supplemental benefits granted during the same period is mandated by 42 U.S.C. § 1320a–6. This provision is

> designed to eliminate a potential windfall to the claimant, where a claimant receives [supplemental benefits], for example, in 1985, and then in 1986 obtains a retroactive [disability benefits] award for 1985. Had the beneficiary collected [disability benefits] at the appropriate time in 1985 his

> or her entitlement to [supplemental benefits], based on need, would have been reduced and possibly eliminated.

*Wheeler v. Heckler,* 787 F.2d 101, 105 (3d Cir.1986).

7. As will be explained further in Part II.C.1, Stewart's argument that he should have been paid retroactive benefits from 1988 or 1990 must be construed as an argument that the hearing officer should have reopened those earlier applications.

the letter) to institute a federal action. *Id.* at 3. Stewart filed his complaint on April 11, 2005, challenging both the length of the period of retroactive benefits as well as the amount of benefits he was awarded. Compl. at 1.

On September 1, 2005, the Commissioner filed the Motion to Dismiss presently before the Court, arguing that Stewart's complaint should be dismissed for lack of subject matter jurisdiction, failure to state a cognizable claim, and failure to exhaust administrative remedies. Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") [Doc. No. 9] at 3, 4, 10. Stewart responded to this motion by writing a letter, dated September 17, 2005, to Susan Donahue ("Donahue"), an Assistant Regional Counsel for the Agency. Pl.'s Resp., Attach. 1. This letter included a number of responses to the Commissioner's motion to dismiss as well several documents relating to his claims. *Id.* Donahue replied on September 26, 2005, suggesting that Stewart forward his arguments to this Court as soon as possible, so that the Court might consider them. Letter from Donahue to Stewart of 9/26/05. On October 24, 2005, Stewart forwarded this letter, as well as the letter and attachments originally sent to Donahue, to the Court. The Court will treat these materials as Stewart's Opposition to the Commissioner's Motion to Dismiss.

## II. DISCUSSION

### A. Standard of Review

A motion to dismiss tests the sufficiency of the plaintiff's pleadings and, as a result, must be considered in light of the liberal notice pleading requirements of the Federal Rules. *See Andrews–Clarke v. Lucent Techs., Inc.,* 157 F.Supp.2d 93, 96 (D.Mass. 2001). Accordingly, a complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove *no* set of facts in sup-

port of his claims which would entitle him to relief." *Roeder v. Alpha Indus., Inc.,* 814 F.2d 22, 25 (1st Cir.1987) (emphasis added) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Rogan v. Menino,* 175 F.3d 75, 78 (1st Cir.1999) (noting that the plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery" (citation and internal quotation marks omitted)). Moreover, "[t]he Court must accept as true all of the allegations made in the complaint and draw all reasonable inferences in [Stewart's] favor." *Baker v. Coxe,* 940 F.Supp. 409, 414 (D.Mass. 1996) (Saris, J.) (citing *Coyne v. City of Somerville,* 972 F.2d 440 (1st Cir.1992)).

In a motion to dismiss, the Court also must determine to what extent it should rely on documents outside of the complaint. The general rule prohibits courts from considering documents outside of the pleadings. *Watterson v. Page,* 987 F.2d 1,3 (1st Cir.1993). There is a narrow exception, however, which allows courts to consider documents that "are not disputed by the parties; for official public records; for documents central to [the plaintiff's] claim; or for documents sufficiently referred to in the complaint." *Id.; Pouliot v. Town of Fairfield,* 184 F.Supp.2d 38, 47 (D.Me.2002).

### B. The Administrative Review Process

Section 205(g) of the Social Security Act provides for judicial review of "any final decision of the Commissioner of Social Security made after a hearing ... by a civil action commenced within sixty days" after the applicant receives notice of the decision or "within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). To be considered a final decision of the Commissioner,

a decision on a social security benefits application must be the highest decision available under Agency rules. *See Wilson v. Secretary of Health & Human Servs.,* 671 F.2d 673, 677 (1st Cir.1982) ("[T]he 'final decision' required to invoke [federal court] jurisdiction has been authoritatively interpreted to mean 'that the administrative remedies provided by the [Commissioner] be exhausted.' " (quoting *Mathews v. Eldridge,* 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976))). Therefore, a brief overview of the administrative review process will be helpful in understanding the nature of Stewart's claims.

Agency regulations provide a comprehensive system of review for denials of benefit applications. The process begins once the Agency makes an "initial determination" on an application. The regulations set forth an illustrative list of Agency actions that constitute "initial determinations" and are thus subject to review. 20 C.F.R. § 404.902. *See also id.* § 404.903 (listing Agency actions that will not be considered initial determinations). Once an "initial determination" is made, the claimant may request reconsideration of the decision by a new Agency official. *Id.* §§ 404.907–404.913. If the claimant is unsatisfied with the Agency's decision on reconsideration, she may then request a hearing before an hearing officer. *Id.* §§ 404.929–404.955. If the claimant is unsatisfied with the outcome of the hearing, she may file a request for review with the Social Security Appeals Council, which will review a case in certain enumerated circumstances. *Id.* §§ 404.967–404.981. Finally, and only after all of the previous steps have been completed, the claimant may obtain judicial review of the Agency decision in federal district court. *Id.* § 404.981.

At each step of the administrative process, the rules set specific time limits for obtaining further review. *See id.* § 404.909(a)(1)(reconsideration); § 404.933(b)(1)(hearing before an administrative law judge); § 404.968(a)(1)(appeals council review); § 404.981 (judicial review). Also at each stage, the Agency may grant additional time upon a claimant's showing of good cause as defined by the rules. *Id.* §§ 404.909(b), 404.933(c), 404.968(b), 404.982.

In the event that a claimant is "dissatisfied with a determination or decision made in the administrative review process, but [does] not request further review" within the appropriate time frame, the rules provide a procedure for reopening prior applications. *Id.* § 404.987. In relevant part, the regulations state that:

A determination, revised decision, decision, or revised decision may be reopened—

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within four years of the date of the notice of the initial determination if we find good cause ... to reopen the case; or

(c) At any time if—

(1) It was obtained by fraud or similar fault ...; [or]

(8) It is wholly or partially unfavorable to a party, but only to correct clerical error or an error that appears on the face of the evidence that was considered when the determination or decision was made ....

*Id.* § 404.988. Therefore, the ease with which a prior application may be reopened varies with the amount of time that has passed since notice of the initial determination was received. This appears to be the only avenue under which unexhausted applications may be reviewed further.

## C. Stewart's Complaint

Stewart's complaint contains two counts:

1. THE PLAINTIFF SHOULD RECEIVE DISABILITY BENEFITS FROM AUGUST 1988 FORWARD TO TODAY.

2. THE BENEFITS SHOULD BE PAID, AT THE MAXIMUM DISABILITY RATE.

Compl. at 1.

### 1. Count I, Request to Reopen Prior Applications

As his first claim, Stewart essentially asserts that the hearing officer's decision to grant him retroactive benefits starting from November of 1996 was inappropriate. He claims that he should have been awarded benefits starting in 1988. Under Agency rules, retroactive benefits may only be awarded for one year prior to a successful application. 20 C.F.R. § 404.621(a). Therefore, in order for Stewart to obtain benefits starting in 1988, he must have filed a successful application in 1989 at the latest.[8] Therefore, Stewart's first claim must be construed as an attack on the hearing officer's failure to reopen the earlier applications for disability benefits.

In order for this Court to exercise jurisdiction over a decision of the Commissioner, that decision must be considered the Commissioner's "final decision." *See* 42 U.S.C. § 405(g) ("Any individual, after any *final decision* of the Commissioner of Social Security made after a hearing ... may obtain a review of such decision by a civil action ...." (emphasis added)). It is well-settled that the Commissioner's refusal to reopen a claim is not such a "final decision." *See Califano v. Sanders,* 430 U.S.

99, 107–08, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (holding that absent a constitutional claim, section 205(g) of the Social Security Act "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits."); *Dvareckas v. Secretary of Health and Human Servs.,* 804 F.2d 770, 771 (1st Cir.1986) ("Absent a constitutional claim, we lack jurisdiction to review the Secretary's refusal to reopen a prior adjudicated claim." (citation omitted)).

■ Therefore, this Court lacks jurisdiction to review the Commissioner's denial of Stewart's request to reopen his 1988, 1990, and 1996 applications unless Stewart can present a colorable constitutional claim. *See Califano,* 430 U.S. at 109, 97 S.Ct. 980 ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions.").

Although Stewart does not raise the claim in his complaint, the Commissioner, in her memorandum, refers to an argument Stewart made in his request for Appeals Council review in which he claimed that the notice provisions in his 1988 and 1990 denials were insufficient as a matter of procedural due process. This argument was based on *Gonzalez v. Sullivan,* 914 F.2d 1197 (9th Cir.1990), in which the Ninth Circuit held that the notice provision then contained in the Agency's initial denial letters was constitutionally defective. Def.'s Mem. at 9 n.5. Stewart claimed in his request for review that "THE 1988 AND 1990 APPLICATIONS WERE EXACTLY LIKE GONZALEZ V. SULLI-

---

**8.** Stewart must also have been considered disabled during that year, of course. Because the hearing officer found that his disability began in April of 1990, his 1988 application would fail in this respect. For simplicity's sake, and because it will not affect the outcome of this motion, however, this Court will ignore this fact. In making this assumption, the Court intends no substantive ruling on the onset date of Stewart's disability.

VAN." R. at 173. In support, he attached a copy of the Agency's Acquiescence Ruling administering the decision. *Id.* at 203. The Acquiescence Ruling provided that a new determination would be made on the merits of a claim if the applicant could show that she (1) received a notice like the notice involved in *Gonzalez;* (2) filed a subsequent benefits application; and (3) either requests reopening of the prior application or requests the same benefits as in the prior application. *Id.* at 204.

In her memorandum, the Commissioner addresses this issue in a footnote. Def.'s Mem. at 9 n.5. She first claims that because *Gonzalez* was a Ninth Circuit case and because the Acquiescence Ruling therefore applied only to jurisdictions within the Ninth Circuit, Stewart is not entitled to reopening under *Gonzalez. Id.* This argument misses the point, however. The fact that the Acquiescence Ruling does not apply to this circuit should not mean that procedural due process does not apply. The Acquiescence Ruling is an administrative response to an adverse decision and does not preclude a federal court from finding a constitutional violation.

The First Circuit Court of Appeals has held that notice of the type involved in *Gonzalez* may justify reopening of a claimant's application, provided that the claimant shows that he "detrimentally relied on [the] inadequate notice." *Gilbert v. Sulli-*

*van,* No. 93–2309, 1995 WL 91120 at *2, 1995 U.S.App. LEXIS 4373, at *8 (1st Cir. Mar. 6, 1995) (unpublished opinion) (citing *Day v. Shalala,* 23 F.3d 1052, 1066 (6th Cir.1994)) [9]; *see also Butland v. Bowen,* 673 F.Supp. 638, 642 (D.Mass.1987) (Tauro, J.) (declaring unconstitutional a similar notice provision and allowing reopening of an application). Therefore, it may be possible for Stewart to show that he was denied of his constitutional right to procedural due process by inadequate notice regardless of the Agency's response to the *Gonzalez* holding.

As the Commissioner implies in her brief, however, Stewart has failed to allege this due process violation in his complaint. In deciding a motion to dismiss, this Court must "accept as true all of the allegations made in the complaint and draw all reasonable inferences in [Stewart's] favor." *Baker,* 940 F.Supp. at 414 (citation omitted). When the complaint completely fails to allege any argument or fact which would sustain a particular claim, however, this Court is without power to consider such a claim. *See Childers v. Maloney,* 247 F.Supp.2d 32, 35–36 (D.Mass.2003) ("In assessing whether a complaint should be dismissed pursuant to Rule 12(b)(6), the Court takes the well-pleaded facts *as they appear in the complaint,* extending the plaintiff every reasonable inference in his favor." (emphasis added, citation omitted)).

---

**9.** *See* proposed Fed. R.App. P. 32.1(a) (proscribing restrictions on the citation to unpublished opinions that are not similarly imposed on published opinions). Proposed subsection (a) reads:

> No prohibition or restriction may be imposed upon the citation of judicial opinions, orders, judgments, or other written dispositions that have been designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like, unless that prohibition or restriction is generally imposed upon the citation of all sources.

*Id.* As already required by some circuits, Subsection (b) of the proposed rule provides that a copy of an unpublished opinion cited in a court document and not available on electronic databases must be submitted to the court. *See, e.g.,* 1st Cir. R. 32.3(a)(3).

*But see generally* Niketh Velamoor, *Proposed Federal Rule of Appellate Procedure 32.1 to Require that Circuits Allow Citation to Unpublished Opinions,* 41 Harv. J. on Legis. 561 (2004) (identifying potential shortcomings of the proposed rule).

In order to have sustained a claim that his procedural due process rights were violated, Stewart would have had to allege at least that he actually received defective notice in at least one of the prior decision letters. His single allegation in his request for Appeals Council review "THAT THE 1988 AND 1990 APPLICATIONS WERE EXACTLY LIKE GONZALEZ V. SULLIVAN" is not sufficiently related to his complaint for the Court to give weight to it in considering this motion to dismiss. *See Watterson,* 987 F.2d at 3 (describing an exception to the rule that the Court is limited to examining the complaint, "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." (citations omitted)).

Thus, the first count of Stewart's complaint must be dismissed without prejudice for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). This Court does not have jurisdiction to hear a request that the Commissioner's prior decision be reopened.

### 2. Count II—Amount of Benefits

■ The second count asserted in Stewart's complaint might be construed in either of two ways. It may be seen as a challenge to the Commissioner's decision to reduce Stewart's retroactive benefit award by the amount he received in supplemental benefits for the same period pursuant to 42 U.S.C. § 1320a–6. Alternatively, the count could be viewed as an appeal of the dollar amount of the disability benefits awarded Stewart. Interpreted either way, however, this Court lacks jurisdiction to hear these claims because Stewart has failed to exhaust administrative remedies.

As mentioned above, Agency rules set forth a number of actions that are considered "initial determinations," and thus subject to the administrative review process. This list includes, *inter alia,* the following actions:

(a) Your entitlement or your continuing entitlement to benefits;

. . .

(c) The amount of your benefit;

. . .

(r) An offset to your benefits under § 404.408b because you previously received supplemental security payments for the same period . . . .

20 C.F.R. § 404.902. Stewart's applications in 1996, 1997, and 2001 all fell under "(a)" above in that they were decisions related to his entitlement to benefits. His 2001 application was completely exhausted for that purpose—all levels of the Agency had a chance to decide whether Stewart was eligible for disability benefits.

On the other hand, Stewart's second count, which could be classified as challenging a decision falling under either "(c)" or "(r)" in the regulation, has been considered only at the initial determination stage. Under the rules, either of these determinations would have been subject to further review within the Agency. *See* 20 C.F.R. § 404.902 ("Initial determinations are the determinations we make that are subject to administrative and judicial review."). In fact, the October 28, 2003 letter informing Stewart of the amount of his benefits and the reduction of the retroactive benefits included explicit notice of his right to request reconsideration.[10] There

---

**10.** This notice read:

Do You Think We Are Wrong?

If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have.

could have been little doubt that either of these determinations was appealable within the Agency.

Therefore, neither denial constitutes a "final decision" within the meaning of section 205(g) of the Act, and this Court lacks jurisdiction to hear them. *See Kaczmarczyk v. Secretary of Health & Human Servs.,* No. 89–30135–F, 1990 WL 25689 at *7, 1990 U.S. Dist. LEXIS 2588, at .*21 (D.Mass. Mar.7, 1990) (Freedman, C.J.) ("Absent a colorable constitutional claim or due process violation in the Secretary's handling of a claim, this Court lacks jurisdiction to review the Secretary's refusal to reopen a claim which has not met the exhaustion requirement." (citations omitted)).

## III.  CONCLUSION

Accordingly, the Commissioner's motion to dismiss [Doc. No. 8] is ALLOWED.

SO ORDERED.

### APPENDIX

| | |
|---|---|
| 1988 | Stewart claims he files his first application for disability benefits (no further action taken). |
| 1990 | Stewart claims he files his second application for disability benefits (no further action taken). |
| Apr. 1, 1990 | Stewart's disability begins (as determined by a hearing officer on Sept. 25, 2002). |
| Feb. 13, 1996 | Agency records indicate Stewart's first disability benefits claim. |
| July 1996 | Feb. 13, 1996 application for disability benefits is denied. |
| Nov. 18, 1997 | Stewart files another application for disability benefits and his first application for supplemental benefits. |
| July 31, 1998 | Nov. 18, 1997 application for disability benefits is denied. |
| Nov. 7, 1998 | Reconsideration of July 31, 1998 decision. Decision is affirmed. |
| Jan. 21, 2001 | Stewart contacts the Agency and requests reopening of the Nov. 18, 1997 application. |
| Mar. 13, 2001 | Agency denies Stewart's request to reopen the Nov. 18, 1997 decision. |
| May 8, 2001 | Stewart files his final application for disability benefits. |
| May 13, 2001 | May 8, 2001 application for disability benefits is denied. |
| June 8, 2001 | Reconsideration of May 13, 2001 decision. Decision is affirmed. |
| June 25, 2001 | Stewart requests a hearing before a hearing officer. |
| Sep. 25, 2002 | Hearing officer issues decision reopening Nov. 18, 1997 application for disability benefits and granting benefits starting Nov. 1996. Finds that Stewart has been disabled since Apr. 1990. |
| Nov. 2, 2002 | Agency notifies Stewart of the amount of his benefits. Letter also indicates Agency will withhold retroactive disability benefits until it determines whether they should be reduced pursuant to 42 U.S.C. § 1320a–6. |
| Nov. 29, 2002 | Stewart requests Appeals Council review of the Sept. 25, 2002 decision of the administrative law judge. |

A person who did not make the first decision will decide your case. We will correct any mistakes.

. . .

• You have 60 days to ask for an appeal.

. . .

• You have to ask for an appeal in writing. We will ask you to sign a form SSA–561–U2, called "Request for Reconsideration". Contact one of our offices if you want help.

Pl.'s Resp., Attach. 2, at 2. Indeed, Stewart requested reconsideration of the amount determinations in the October 28, 2003 letter. Pl.'s Resp., Attach. 3. To date, it appears that the Agency has not reached a decision on this request.

| | |
|---|---|
| Oct. 28, 2003 | Agency notifies Stewart of the amount of his benefits. Also informs Stewart of the amount by which the Agency will reduce his retroactive benefits. |
| Aug. 18, 2004 | Appeals Council denies Nov. 29, 2002 request for review. |
| Apr. 11, 2005 | Stewart files complaint in U.S. District Court. |