William M. STEWART, Plaintiff,

v.

Michael J. ASTRUE, as he is Commissioner of the Social Security Administration, Defendant.

Civil Action No. 06–11043–WGY.

United States District Court, D. Massachusetts.

Jan. 22, 2008.

Christopher Alberto, Eugenia M. Carris, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

The procedural history and facts of this case are thoroughly summarized by this Court in *Stewart v. Barnhart,* 402 F.Supp.2d 355, 356–359 (D.Mass.2005) ("*Stewart I*"). A quick review of the pertinent facts, however, is helpful. The claimant, William M. Stewart ("Stewart"), began experiencing health problems in 1985 and in 1988 was finally diagnosed with multiple sclerosis. *Id.* at 356. Stewart applied for and was denied Social Security disability benefits a number of times. *Id.* at 356–57. The questions presently before the Court are (1) whether the Social Security Administration's (the "Agency") denial notices with regard to Stewart's August 1988 and April 1990 disability applications were so inadequate as to deprive Stewart of constitutional due process, Compl. [Doc. No. 1] ¶ 1; (2) whether the Agency's failure to respond to a request for reconsideration of the October 2003 denial of benefits was a denial of due process, *id.* ¶ 2; (3) whether the amount of benefits ought be adjusted, *id.* ¶ 1–2 at 2; and (4) whether, if pertinent, Stewart has suffered any damages. *Id.* ¶ 3 at 2.

### A. Administrative Procedural History

Stewart claims to have filed his first application for disability benefits in 1988 and to have filed a second application in 1990. *Stewart,* 402 F.Supp.2d at 356. These records, however, are unavailable:

The Commissioner does not dispute directly that Stewart filed claims in 1988 and 1990.... [T]he Agency does not have a record because of an administrative policy allowing for destruction of denied application records anywhere from six to twelve months after a decision is made at the highest level of administrative review requested.

*Id.* at 357 n. 4 (internal quotation marks omitted). In addition, Stewart does not have a copy of the applications or denial notices because his own records were lost due to Hurricane Bob and an unnamed storm in the early 1990s. R. at 173.

According to the Agency, Stewart first filed in February 1996. *Stewart,* 402 F.Supp.2d at 357. This application was denied and, according to the Agency, no further action was taken. *Id.* at 357.

Stewart filed another application in November 1997, which was also denied. *Id.* This time Stewart requested reconsideration of the denial and a reopening of the denied application. *Id.* The Agency denied these requests. *Id.*

Stewart applied for a final time in May 2001. *Id.* His application was again denied, but Stewart pursued his application further and requested a hearing before an Administrative Law Judge ("hearing officer"). *Id.* "The hearing officer first found that Stewart had met the Agency's definition of disabled since April 1, 1990 ... and he ordered that benefits ... be payable based on [Stewart's prior] application for disability insurance benefits filed on November 18, 1997." *Id.* (internal citation omitted)(internal quotation marks omitted)(alteration in original).

On November 2, 2002, the Agency sent Stewart the notification of his benefits. R. at 174. Stewart requested a review of the hearing officer's decision on November 29, 2002. R. at 172. On October 28, 2003, the Agency sent Stewart a notice indicating that his benefits had been adjusted. Mo-

tion for Reconsideration [Doc. No. 12, Attach. No. 3] at 6. Stewart again requested reconsideration on December 26, 2003. *Id.* at 3. On August 18, 2004, the Appeals Council denied Stewart's request to review the hearing officer's decision. R. at 9.

## B. Procedural Posture

In *Stewart I,* Stewart appealed the hearing officer's decision on the grounds that he should have received disability benefits from August 1988, the date he claims he first applied, and that the benefits should be readjusted. *Stewart,* 402 F.Supp.2d at 361. This Court granted the Agency's motion to dismiss, holding that it lacked jurisdiction to review the Commissioner's denial of Stewart's request to reopen his 1988, 1990, and 1996 applications and to review of the benefits determination because neither claim was a final decision allowing invocation of judicial review. *Id.* at 361, 363; *see* 42 U.S.C. § 405(g).

In the instant case, Stewart complains that the Agency provided inadequate denial notice on his August 1988 and April 1990 disability applications. Compl. ¶ 1. Stewart also alleges that failure to respond to a request for reconsideration is a violation of due process. *Id.* ¶ 2. Stewart petitions this Court and requests that:

1.  [t] he Plaintiff should receive disability benefits from August 1988 forward to today ...

2.  Freeze [his] wages back to August 1988.

3.  Damages

Compl. ¶¶ 1–3 at 2.

This Court granted the Agency's Motion to Dismiss on res judicata grounds. On appeal, however, the Agency conceded that

*Stewart I* was dismissed without prejudice and therefore did not have a res judicata effect. USCA Mandate [Doc. No. 17] at 1. The case has been remanded to this Court for further proceedings. Neither party has filed any further pleadings since the remand.

## C. Federal Jurisdiction

Section 405(g) of the Social Security Act provides for judicial review of any final decision of the Commissioner of Social Security in the district court of the judicial district in which the plaintiff resides. 42 U.S.C. § 405(g). As Stewart resides in Hyannis, Massachusetts, R. at 28, this Court may properly exercise jurisdiction.

## II. ANALYSIS

### A. Administrative Review Process[1]

*Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), held that section 405(g) of the Social Security Act ordinarily "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits," *id.* at 107–108, 97 S.Ct. 980, but if the denial presents a colorable constitutional claim, then the court possesses jurisdiction to resolve such claim. *Califano,* 430 U.S. at 109, 97 S.Ct. 980; *Stewart,* 402 F.Supp.2d at 361. Courts have held that claims of inadequate notice may present a colorable constitutional issue. 1 BARBARA SAMUELS, SOCIAL SECURITY DISABILITY CLAIMS: PRACTICE AND PROCEDURE § 18:61 (2d ed. 2007).

The Ninth Circuit explained in *Gonzalez v. Sullivan,* 914 F.2d 1197, 1203 (9th Cir. 1990), that the language in the denial notice in use prior to February 1990 [2] failed

---

1.  *Stewart I* contains a thorough discussion of the system of review after benefit applications are denied. *Stewart,* 402 F.Supp.2d at 359–361.

2.  The notice read: "If you do not request reconsideration of your case within the prescribed time period, you still have the right to

to "clearly indicate that if no request for reconsideration is made, the determination is final." The Ninth Circuit concluded that the notice thus "violate[d] appellant's fifth amendment right to due process." *Id.* Furthermore, "[t]he First Circuit Court of Appeals has held that notice of the type involved in *Gonzalez* may justify reopening of a claimant's application, provided that the claimant shows that he 'detrimentally relied on the inadequate notice.'" *Stewart,* 402 F.Supp.2d at 361; (quoting *Gilbert v. Sullivan,* No. 93–2309, 1995 WL 91120, *2 (1st Cir. Mar. 6, 1995)); *see also Butland v. Bowen,* 673 F.Supp. 638, 642 (D.Mass.1987) (Tauro, J.) (declaring unconstitutional a similar notice provision and allowing reopening of an application).

In a similar case addressed by this Circuit, the appellant received a *Gonzalez*-type notice of denial and, acting on the notice, reapplied. *Gilbert,* 1995 WL 91120, at *3. The First Circuit held that because she chose to reapply for the same benefits rather than appeal "evidence[d] her reliance on the Secretary's erroneous advice." *Id.* The First Circuit concluded that the "Secretary could not constitutionally refuse to reopen [the appellant's] first application." *Id.* at *4.

### B. Request to Reopen the 1988 Application

Just as in *Stewart I,* "Stewart's first claim must be construed as an attack on the hearing officer's failure to reopen the earlier applications for disability benefits." *Stewart,* 402 F.Supp.2d at 361. As discussed above, this Court generally would

not have jurisdiction over refusals to reopen because they are not final decisions ripe for judicial review. The Court, however, must ask whether Stewart has presented a colorable constitutional claim that is best suited for resolution in the courts. *See Califano,* 430 U.S. at 109, 97 S.Ct. 980.

For this to be the case, Stewart must show that he received a *Gonzalez*-type notice and that he detrimentally relied on that notice. Although the record does not include Stewart's August 1988 application (it is presumed irretrievably missing), the application can be reconstructed. *See* 1 BARBARA SAMUELS, SOCIAL SECURITY DISABILITY CLAIMS: PRACTICE AND PROCEDURE § 11:9.2 (2d ed. 2007). As was done in *Stewart I,* the Court will assume the 1988 application was filed and then denied by the Commissioner.[3] *See Stewart,* 402 F.Supp.2d at 357 n. 4.

In 1989, the notice language at issue in *Gonzalez* was revised, and the Agency completed its implementation of the revised notice in February 1990. R. at 204. Accordingly, this Court presumes that applications, such as Stewart's 1988 application, that were filed and denied before February 1990 contain the defective notice language. *See id.* (indicating determinations made before July 1991 would not be given res judicata effect); *Freese v. Astrue,* No. 07–1–P–S, 2007 WL 2710341, at *5 (D.Me.2007) (noting "many pre–1990 initial denial letters" contained the inadequate language). Thus, the Agency could not constitutionally have refused to reopen Stewart's 1988 application for disability

---

file another application at any time." *Gonzalez,* 914 F.2d at 1203.

**3.** Stewart consistently has alleged that he filed 1988 and 1990 disability applications. *See* R. at 11, 54, 81, 84. The record also contains Stewart's medical records which corroborates Stewart's statements that he was

diagnosed with multiple sclerosis in 1988. R. at 183, 197. In addition, Stewart states that after his diagnosis of multiple sclerosis in 1988, he was told that he should apply for disability. R. at 173. These facts suggest that Stewart, more likely than not, did apply for disability benefits in 1988.

benefits. In addition, Stewart's detrimental reliance on the defective notice language is demonstrated, like in *Gilbert*, by the fact that Stewart reapplied for the same benefits in April 1990 rather than appealing the adverse decision. Stewart's request to reopen the 1988 application should, therefore, have been allowed.

### C. Request to Reopen the 1990 Application

█ If pre-February 1990 notices are assumed to contain the constitutionally defective language, the corollary assumption is that post-February 1990 notices are constitutionally valid. *See Niemi v. Shalala*, No. 95–1743, 1996 WL 141790 at \*3 (1st Cir. Mar. 29, 1996) (noting language added in 1990 was sufficient); *Day v. Shalala*, 23 F.3d 1052, 1065 (6th Cir.1994) (accepting plaintiff's concession that the revisions cured the deficiencies in the pre–1990 notices); *Rooney v. Shalala*, 879 F.Supp. 252, 255 (E.D.N.Y.1995) (noting that the post–1990 revisions "explicitly set forth the critical information, missing from the earlier form, concerning the adverse effect of failing to appeal").

The Commissioner has not conceded here that the denial notice to Stewart's 1990 application contained inadequate language,[4] nor is Stewart able to point to defective language in his post–1990 denial notice. Stewart's request to reopen his April 1990 application must thus be denied.

### D. Failure to Respond to December 2003 Request for Reconsideration Letter is Not a Violation of Procedural Due Process[5]

After the Agency notified Stewart of his benefits, R. at 174, he requested a review of the hearing officer's decision on November 29, 2002. R. at 173. Almost a year later, on October 28, 2003, the Agency notified Stewart that it was reducing his Social Security payments because Stewart received SSI money. Mot. for Reconsideration. [Doc. No. 12, Attach. No. 3] at 6. Stewart again requested reconsideration on December 26, 2003. *Id.* at 3. On August 18, 2004, the Appeals Council denied Stewart's request to review the hearing officer's decision. R. at 9.

█ Contrary to Stewart's claim, the Appeals Council did respond to his request to review the hearing officer's decision. Stewart made two requests, and they were essentially the same. R. at 173; Mot. for Recons. [Doc. No. 12, Attach. No. 3] at 3. Both requests asked for a review of the hearing officer's decision to determine benefits from the 1997 application, not from the earlier 1988 or 1990 applications. *Id.* The Agency responded only once on August 18, 2004, after both requests were made, and denied the request for review.

---

**4.** In *Freese v. Astrue*, No. 07–1–P–S, 2007 WL 2710341, at \*9 (D.Me.2007), the Commissioner conceded that "for unknown reasons, the August 1, 1992 denial notice included the same inadequate language as did the" pre–1990 notices.

**5.** It is important to note that the Appeals Council (made up of thirty-three Administrative Appeals Judges and twenty-seven Appeals Officers) receives around 94,000 requests to review a year. Social Security Administration—Why does it take so long for the Appeals Council to act on my case?, http://ssa-custhelp.ssa.gov/cgi-bin/ssa.cfg/php/enduser/

std_alp.php?p_page=1&p_cv=1.50&p_pv=&p_prods=&p_cats=50 (last accessed January 11, 2008).

It could also be argued that the Appeals Council has yet to address Stewart's second request for review of the decision. Even if that is the case, this Court only has jurisdiction to review a final decision of the Commissioner. A non-response is not such a decision, as opposed to the August 18, 2004 denial letter, which lays the proper groundwork for an appeal to this Court. 20 C.F.R. § 404.900(a)(5); R. at 10.

This simple response, however, resolved both the 2002 and 2003 requests for review.

Stewart cannot claim that his due process rights have been violated as he has had a hearing and notification of his benefits. He knew to appeal and did so first, to the Appeals Council and now to this Court. Stewart's procedural due process rights have not been violated.

## III. CONCLUSION

As discussed above, the Agency must reopen Stewart's 1988 application as its denial notice was unconstitutional. Any discussion by this Court concerning benefits is not ripe until the Agency has investigated and made a decision regarding this application. If Stewart is still dissatisfied with the result of the reopened application, he may then request further review or a hearing. 20 C.F.R. § 404.994.

Accordingly, this case is remanded to the Agency for further proceedings in accordance with his opinion.

SO ORDERED.